UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KINGSLEY JUNIOR MCDONALD,

                    Petitioner,

          v.

THOMAS FEELEY, *in his official capacity*
*as Field Office Director, Buffalo Field*
*Office, U.S. Immigration & Customs*
*Enforcement*, JEFFREY SEARLS, *in his*
*official capacity as Facility Director,*
*Buffalo Federal Detention Facility*, and
MERRICK GARLAND[1], *in his official*
*capacity as Attorney General of the United*
*States*,

                    Respondents.

_____

**DECISION AND ORDER**

6:20-CV-06797 EAW

## <u>INTRODUCTION</u>

Petitioner Kingsley Junior McDonald ("Petitioner"), an immigration detainee

represented by counsel and currently detained at the Buffalo Federal Detention Facility

("BFDF"), seeks a *writ of habeas corpus* pursuant to 28 U.S.C. § 2241.  The operative

pleading is the amended petition filed on February 26, 2021.  (Dkt. 9).  Petitioner contends

that his rights to procedural and substantive due process have been violated and seeks

immediate release.  (*Id.* at 30).  Respondents oppose the amended petition.  (Dkt. 12).

---

[1]     Merrick Garland became Attorney General of the United States on March 11, 2021,
and has been automatically substituted as a respondent pursuant to Federal Rule of Civil
Procedure 25(d).

Petitioner has also filed a motion for appointment of counsel under the Criminal Justice Act , 18 U.S.C. § 3006A (the "CJA") (Dkt. 10), as to which Respondents have taken no position (Dkt. 11).

For the reasons set forth below, the Court grants the amended petition solely to the extent that the government is ordered to provide Petitioner with a bond hearing consistent with the procedural protections discussed herein.  The amended petition is denied without prejudice in all other respects.  Petitioner's motion for CJA counsel is granted.

## **BACKGROUND**

The following facts are taken from the amended petition, Respondents' response thereto, and the supporting documents submitted by the parties.[2]

Petitioner is a native and citizen of Jamaica.  (Dkt. 12-1 at ¶ 5).  He entered the United States as a lawful permanent resident in 1992, when he was nine years old.  (Dkt. 9

---

[2]     The administrative history of this matter is set forth in detail in the declaration of Deportation Officer Brandon Smith ("Officer Smith").  (Dkt. 12-1).  Officer Smith states in his declaration that the facts set forth therein are based on his review of "files and information maintained by" the Department of Homeland Security.  (*Id*. at ¶ 2).  In his reply papers, Petitioner suggests that the information contained in Officer Smith's declaration is unreliable, because the only way that Officer Smith could truly know what happened at a particular immigration hearing is "to physically obtain and then listen to the Digital Audio Recording ('DAR') from the Executive Office for Immigration Review." (Dkt. 13 at 13).  However, Petitioner presents no evidence that Officer Smith did not in fact obtain the relevant DARs, and Petitioner's counsel further insists that he is "not even tangentially suggest[ing] that Officer Smith would include a mistruth within a declaration." (*Id*. at 13 n.8).  Officer Smith's declaration is sworn to under penalty of perjury.  Absent any showing by Petitioner that the information contained therein is inaccurate, the Court rejects Petitioner's contention that Officer Smith's declaration is "entitled to absolutely minimal weight if considered at all."  (*Id*. at 13).

at ¶ 20).  Petitioner's wife, daughter, and three sisters are citizens of the United States. (*Id*.).

In 2016, United States Immigration and Customs Enforcement ("ICE") became aware that Petitioner was incarcerated at the Suffolk County Jail.  (Dkt. 12-1 at ¶ 5).  Based on his criminal history[3], ICE suspected that Petitioner was a candidate for immigration removal proceedings.  (*Id*.).  Immigration removal proceedings were initiated against Petitioner on September 8, 2016, via issuance of a Notice to Appear charging Petitioner with being subject to removal pursuant to Immigration and Nationality Act ("INA") § 237(a)(2)(B)(i) as an alien convicted of a violation of a law or regulation relating to a controlled substance, and pursuant to INA § 237(a)(2)(A)(iii) as an alien convicted of an offense relating to the illicit trafficking in a controlled substance.  (*Id*. at ¶ 6).

Petitioner was taken into ICE custody during a traffic stop on October 5, 2016.  (*Id*. at ¶ 8).  Petitioner was advised that he would be detained pending an outcome in his removal proceedings.  (*Id*. at ¶ 9).

Petitioner appeared for his first hearing before an immigration judge ("IJ") on November 16, 2016.  (*Id*. at ¶ 12).  Petitioner's counsel advised the IJ that he planned to

---

[3]     The record before the Court indicates that Petitioner has been convicted of the following: (1) two separate instances of harassment in the second degree in 2001; (2) disorderly conduct in 2001; (3) driving while under the influence in 2003; (4) attempted assault in 2003; (5) "sale of marijuana" and resisting arrest in 2007; (6) resisting arrest in 2008; (6) menacing in the second degree in 2012; (7) resisting arrest in 2012; and (8) resisting arrest in 2014.  (Dkt. 12-1 at ¶ 10).  At the time he has arrested by ICE officers, Petitioner had open criminal charges for unlawfully fleeing a police officer, reckless driving, aggravated unlicensed operation of a motor vehicle, and unlawful possession of marijuana.  (*Id*.).  ICE records also indicate that the Suffolk County Police Department had identified Petitioner as "a high ranking Blood [sic] gang member."  (Dkt. 12-2 at 16).

file a motion in state court seeking to vacate petitioner's drug conviction, thus rendering the grounds for removal unsubstantiated. (*Id*.). The matter was adjourned to January 5, 2017. (*Id*.).

Additional charges of removability were asserted against Petitioner on December 5, 2016, charging him with being removable pursuant to INA § 237(a)(2)(A)(ii) as an alien who has been convicted of two or more crimes involving moral turpitude not arising out a single scheme of criminal conduct. (*Id*. at ¶ 13).

Petitioner appeared for his hearing on January 5, 2017, but his counsel did not appear. (*Id*. at ¶ 14). "Upon further investigation, it was determined that the attorney for [Petitioner] was not licensed to practice law." (*Id*.). The IJ adjourned the hearing to January 11, 2017, to allow Petitioner an opportunity to obtain new counsel if he wished. (*Id*.). The IJ further scheduled a bond hearing for Petitioner on March 9, 2017, pursuant to *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015). (Dkt. 12-1 at ¶ 14).

At the hearing on January 11, 2017, Petitioner appeared and requested a continuance so that he could obtain counsel. (*Id*. at ¶ 15). The matter was adjourned until February 21, 2017. (*Id*.).

Petitioner was transferred to the custody of the Suffolk County Sheriff's Office on February 13, 2017, to allow for his appearance in state court criminal proceedings. (*Id*. at ¶ 16). Because Petitioner had been transferred to criminal custody, the immigration proceedings against him were administratively terminated. (*Id*. at ¶ 17).

Petitioner was returned to ICE's custody on June 16, 2017, and the Department of Homeland Security ("DHS") moved to re-calendar the immigration proceedings against

him.  (*Id*. at ¶ 18).  Petitioner appeared for an immigration hearing on July 19, 2017, at which time he requested an adjournment to obtain counsel.  (*Id*. at ¶ 19).  The IJ adjourned the immigration proceedings until August 3, 2017, and scheduled a bond hearing for July 24, 2017.  (*Id*.).

Petitioner appeared for his bond hearing on July 24, 2017, without an attorney.  (*Id*. at 20).  He informed the IJ that he had additional evidence he wished to present, and the IJ rescheduled the bond hearing to July 27, 2017, to allow him to do so.  (*Id*.).  Petitioner appeared at the bond hearing on July 27, 2017, again without counsel, and presented additional evidence and testified on his own behalf.  (*Id*. at ¶ 21).  Over ICE's objection, the IJ granted a further continuance to July 31, 2017, to allow Petitioner to finalize his asylum application and present additional evidence in support of his request for bond.  (*Id*. at ¶ 21).  Petitioner appeared again on July 31, 2017, and presented his application for asylum and additional evidence in support of his request for bond.  (*Id*. at ¶ 22).

Petitioner appeared without counsel for his removal hearing on August 3, 2017.  (*Id*. at ¶ 23).  The IJ found that Petitioner was removable as charged, and scheduled a hearing for adjudication of his application for asylum for September 29, 2017.  (*Id*.).

The IJ issued a written order denying bond to Petitioner on August 10, 2017.  (*Id*. at ¶ 24).  As required by *Lora*, the IJ placed on the government the burden of showing by clear and convincing evidence that Petitioner was either a risk of flight or a danger to the community.  (Dkt. 12-2 at 47).  The IJ found that DHS had met its burden of proof both as to dangerousness and risk of flight, and denied Petitioner bond, without considering

whether there were less-restrictive alternatives to detention that could mitigate these risks. (*Id*. at 47-49).

On August 30, 2017, Petitioner was again transferred to the custody of the Suffolk County Sheriff's Office for state criminal proceedings. (Dkt. 12-1 at ¶ 25). Petitioner's immigration proceedings were administratively terminated a second time. (*Id*. at ¶ 26). Petitioner was returned to ICE's custody on February 2, 2018, and ICE moved to re-calendar his immigration proceedings on February 6, 2018. (*Id*. at ¶ 27). A hearing was scheduled for March 29, 2018. (*Id*. at ¶ 27).

At the hearing on March 29, 2018, Petitioner requested additional time to prepare and to have his wife file a Form 1-130, Petition for Alien Relative. (*Id*. at ¶ 29). The hearing was therefore adjourned to April 11, 2018. (*Id*.).

Petitioner appeared with counsel at the hearing on April 11, 2018. (*Id*. at ¶ 30). Counsel requested a "lengthy continuance" to allow her to prepare. (*Id*.). ICE opposed the request. (*Id*.). The IJ granted an adjournment to May 8, 2018, which Petitioner's counsel objected was too short. (*Id*.).

Petitioner appeared with counsel at the hearing on May 8, 2018. (*Id*. at ¶ 31). Counsel advised that Petitioner's wife would file a Form I-130 if she had the resources to do so, and provided that IJ a copy of Petitioner's Form I-589, Application for Asylum and Withholding of Removal. (*Id*.). A hearing on Petitioner's application was set for July 5, 2018. (*Id*.).

Petitioner appeared with counsel at the removal hearing on July 5, 2018, and testified on his own behalf. (*Id*. at ¶ 32). His mother also gave testimony in support of his

application.  (*Id.*).  The matter was continued to August 8, 2018, for expert testimony, but due to an issue involving the temporary unavailability of the original IJ, it was further adjourned to August 17, 2018.  (*Id.* at ¶¶ 33-34).  The matter was then adjourned again to September 14, 2018.  (*Id.* at ¶ 35).

Petitioner's hearing continued on September 14, 2018, with the hearing of expert testimony.  (*Id.* at ¶ 36).  The IJ reserved decision and afforded the parties the opportunity to submit closing briefs.  (*Id.*).

On November 5, 2018, the IJ issued a decision denying Petitioner's requests for relief from removal and ordering that he be removed to Jamaica.  (*Id.* at ¶ 37).  Petitioner appealed the IJ's decision to the Board of Immigration Appeals (the "BIA"), and his appeal was denied on October 9, 2019.  (*Id.* at ¶ 38).  Petitioner filed a Petition for Review ("PFR") with the United States Court of Appeals for the Second Circuit on November 7, 2019.  (*Id.* at ¶ 40).

The Second Circuit granted the PFR on August 10, 2020.  (*Id.* at ¶ 46).  In particular, the Second Circuit concluded that the IJ and BIA had "erred in finding that, although a Jamaican gang likely specifically intends to torture McDonald, he did not establish that the Jamaican government would likely acquiescence [sic] to his torture."  *McDonald v. Barr*, 823 F. App'x 13, 14-15 (2d Cir. 2020).  The Second Circuit accordingly remanded the matter to the BIA "for clarification, for additional analysis, and for a more reasoned determination."  *Id.* at 15.

On or about October 19, 2020, Petitioner's counsel "mailed the BIA a letter requesting that they expedite the briefing schedule as more than two months had passed at

that time since the Second Circuit remanded Petitioner's case to the BIA."  (Dkt. 9 at ¶ 33).

However, the BIA did not issue a briefing schedule until February 9, 2021.  (*Id*. at ¶ 34).

The record before the Court reflects that Petitioner's case remains pending on remand

before the BIA.  (Dkt. 12-1 at ¶ 47).

## DISCUSSION

## I.    **Jurisdiction and Legal Standard**

The  federal  habeas  corpus  statute  gives  district  courts  jurisdiction  to  hear

immigration-related detention cases.  *See* 28 U.S.C. § 2241(c)(3); *Demore v. Kim*, 538 U.S.

510, 517-18 (2003) (holding federal courts have jurisdiction to review challenges to pre-

removal detention); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding "§ 2241 habeas

corpus proceedings remain available as a forum for statutory and constitutional challenges

to  post-removal-period  detention"  in  immigration  cases).   District  courts  do  not  have

jurisdiction over challenges to the legality of final orders of deportation, exclusion, and

removal; jurisdiction to review such challenges rests exclusively in circuit courts.  *See*

*Gittens v. Menifee*, 428 F.3d 382, 384 (2d Cir. 2005) ("[The REAL ID Act, 119 Stat. 231,

§ 106(a) (May 11, 2005)] eliminates habeas jurisdiction over final orders of deportation,

exclusion, and removal, providing instead for petitions of review . . . which circuit courts

alone can consider.").

"When a petitioner brings a habeas petition pursuant to § 2241, the petitioner 'bears

the burden of proving that he is being held contrary to law; and because the habeas

proceeding  is  civil  in  nature,  the  petitioner  must  satisfy  his  burden  of  proof  by  a

preponderance of the evidence.'"  *Dzhabrailov v. Decker*, No. 20-CV-3118 (PMH), 2020

WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)); *see Cruz v. Decker*, No. 18-CV-9948 (GBD) (OTW), 2019 WL 7572975, at *3 (S.D.N.Y. Aug. 27, 2019) ("To obtain [ ] relief [under § 2241], the petitioner must show violation of his rights by a preponderance of the evidence." (citing *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997))), *report and recommendation adopted*, 2019 WL 6318627 (S.D.N.Y. Nov. 26, 2019).

## II.    <u>Named Respondents</u>

As a preliminary matter, the government contends that Jeffrey J. Searls, the Officer in Charge at the Buffalo Federal Detention Facility, is the only respondent with immediate custody over Petitioner, and consequently the only proper respondent.  (Dkt. 12-4 at 23-24).  The Court agrees with the government and dismisses all respondents except for Jeffrey Searls from the instant action.  *See Rodriguez v. Barr*, No. 6:18-cv-06757-MAT, 2019 WL 2192516, at *3 n.3 (W.D.N.Y. May 21, 2019) ("Searls is the only proper respondent in this § 2241 proceeding as he is the person with direct control over Petitioner's detention." (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) ("[I]n habeas challenges to present physical confinement . . . the default rule is that the proper respondent is the warden of the facility where the prisoner is being held[.]"))); *Hassoun v. Sessions*, No. 18-CV-586-FPG, 2019 WL 78984, at *7 (W.D.N.Y. Jan. 2, 2019) ("The majority view in the Second Circuit requires the 'immediate custodian,' generally the prison warden, to be named as a respondent in 'core' immigration habeas proceedings—*i.e.*, those challenging present physical confinement." (quotation omitted)); *see also S.N.C. v. Sessions*, 325 F. Supp. 3d 401, 407 (S.D.N.Y. 2018) ("If, on the other hand, the petition challenges a broader form of

legal, non-physical custody, then the proper respondent is the person with legal authority to effect that custody.").

## III.   **Procedural Due Process**

Petitioner argues that his continued detention is a violation of his procedural due process rights.  As set forth below, the Court agrees that Petitioner has not been afforded procedural due process, but rejects Petitioner's argument that the only appropriate relief is release on conditions set by this Court.  (*See* Dkt. 9 at ¶¶ 65-71).  Instead, the Court orders the government to provide Petitioner with a bond hearing at which: (1) the government must demonstrate dangerousness or flight risk by clear and convincing evidence; and (2) the IJ must consider non-bond alternatives to detention or, if setting a bond, ability to pay.

As the Second Circuit recently affirmed, unreasonably prolonged immigration detention without appropriate procedural protections may constitute a due process violation.  *Velasco Lopez v. Decker*, 978 F.3d 842, 846 (2d Cir. 2020).  For the reasons previously articulated in other decisions by this Court, *see, e.g.*, *Constant v. Barr*, 409 F. Supp. 3d 159, 167-68 (W.D.N.Y. 2019), this Court agrees with the overwhelming majority of courts in this Circuit that the multi-factor approach articulated by the court in *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *1 (S.D.N.Y. May 23, 2018), *appeal withdrawn*, No. 18-2591, 2019 WL 4137822 (2d Cir. May 7, 2019), and other courts within this Circuit, is a useful tool for addressing procedural due process claims for aliens—like Petitioner—who are detained pursuant to 8 U.S.C. § 1226(c).  Those non-exclusive factors are as follows:

(1) the length of time the petitioner has been detained; (2) the party responsible for the delay; (3) whether the petitioner has asserted defenses to removal; (4) whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable; (5) whether the detention facility is meaningfully different from a penal institution for criminal detention; (6) the nature of the crimes committed by the petitioner; and (7) whether the petitioner's detention is near conclusion.

*Cabral v. Decker*, 331 F. Supp. 3d 255, 261.

As to the first factor, Petitioner has been continuously in immigration detention since February 2, 2018, or more than three years, and was previously in immigration detention from October 5, 2016, to February 13, 2017, and then again from June 16, 2017, to August 30, 2017. (*See* Dkt. 12-4 at 17 (Respondent acknowledges that Petitioner has been "detained for approximately 42 months in total")). Thus, "[t]he first and 'most important' . . . factor weighs heavily in favor of granting the petition." *Bermudez Paiz v. Decker*, No. 18-CV-4759 (GHW) (BCM), 2018 WL 6928794, at *13 (S.D.N.Y. Dec. 27, 2018) (citation omitted). "[C]ourts in this Circuit have generally been skeptical of prolonged detention of removable immigrants, without process, lasting over six months," *Lett v. Decker*, 346 F. Supp. 3d 379, 387 (S.D.N.Y. 2018) (quoting *Lopez v. Sessions*, No. 18 Civ. 4189 (RWS), 2018 WL 2932726, at *14 (S.D.N.Y. June 12, 2018)), *appeal filed*, No. 18-3714 (2d Cir. Dec. 11, 2018), and "courts have found detention shorter than a year to be unreasonably prolonged as part of procedural due process analysis," *Rosado Valerio v. Barr*, No. 19-CV-519, 2019 WL 3017412, at *4 (W.D.N.Y. July 10, 2019) (collecting cases), *appeal dismissed*, No. 19-2848, 2020 WL 1126526 (2d Cir. Jan. 9, 2020). There can be no question that Petitioner's detention has been extraordinarily lengthy.

Respondent contends that the second factor in the analysis—which party is responsible for the delay—undercuts a finding of an unreasonable length of detention in Petitioner's case because "Petitioner has been responsible for most of the delays in his proceedings."  (Dkt. 12-4 at 20).  For procedural due process claims, when "considering whether [Petitioner] or the Government is responsible for the prolonged proceedings, the Court may examine the record to determine whether the alien sought repeated or unnecessary continuances, or filed frivolous claims and appeals."  *Vallejo v. Decker*, No. 18-CV-5649, 2018 WL 3738947, at *4 (S.D.N.Y. Aug. 7, 2018) (quotation omitted)); *see Sajous*, 2018 WL 2357266, at *11 ("[A]liens who are merely gaming the system to delay their removal should not be rewarded with a bond hearing that they would not otherwise get under the statute." (quoting *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 476 (3d Cir. 2015))).  "[C]ourts should keep in mind that 'aliens should not be punished for pursuing avenues of relief and appeals[,]' but evidence of bad faith delays may cut against them."  *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *7 (S.D.N.Y. July 25, 2018) (quotation omitted), *appeal withdrawn*, No. 18-2824, 2019 WL 1377025 (2d Cir. Feb. 5, 2019).

Here, the record does show that a significant portion of the delay in adjudication of Petitioner's removal proceedings can be attributed to requests for adjournment made by Petitioner.  However, the record does not show that Petitioner was engaging in bad faith delay tactics.  To the contrary, Petitioner's requests for continuances were made to obtain counsel, to gather and present evidence, and for counsel to prepare for the merits hearing.  As such, it would not be appropriate to penalize Petitioner for requesting these

adjournments.  *See, e.g.*, *Vallejo*, 2018 WL 3738947, at *4; *Hernandez*, 2018 WL 3579108, at *7; *Sajous*, 2018 WL 2357266, at *11.  Nor can the Court say that Petitioner's appeal of the IJ's original decision was frivolous or in bad faith—to the contrary, Petitioner was successful in seeking to overturn that decision, and the Second Circuit's decision made clear that the error was a substantive one.  *See Hechavarria*, 891 F.3d at 56 n.6 (noting the Supreme Court has given weight to a petitioner's decision to pursue review of a removal order in the "context only of an immigrant who has 'substantially prolonged his stay by abusing the processes provided to him,' *Nken v. Holder*, 556 U.S. 418, 436 (2009)—not of an immigrant who simply made use of the statutorily permitted appeals process").  Thus, while much of the delay in this case rests with Petitioner's litigation strategy, the Court cannot conclude that that strategy has been employed for purposes of creating delay, and this factor accordingly favors Petitioner.

As for the third factor, Petitioner has asserted defenses to removal in his immigration proceedings—namely, he seeks protection under the Convention Against Torture.  Moreover, while "[t]he Court need not inquire into the strength of [Petitioner's] defenses," *Sajous*, 2018 WL 2357266, at *11, the Second Circuit's grant of Petitioner's PFR emphasizes the non-frivolous nature of his claims.  As the Second Circuit's decision explains, it is undisputed that a Jamaican gang likely intends to torture Petitioner and that Petitioner "cannot safely report to police the threat posed to him by the gang that killed his father because the Jamaican government and police force are closely linked with the gang." *McDonald*, 823 F. App'x at 15.  Accordingly, this factor weighs heavily in Petitioner's favor.  *See Cabral*, 331 F. Supp. 3d at 261-62 (finding the third factor weighed in

petitioner's favor because he asserted several defenses to his removal "including asylum . . . and relief under the Convention Against Torture"); *Perez v. Decker*, No. 18-CV-5279 (VEC), 2018 WL 3991497, at *5 (S.D.N.Y. Aug. 20, 2018) ("Petitioner has made a claim for asylum that could be a defense to his removal, again tilting the scales toward his unreviewed detention being unreasonable.").

The fourth factor also weighs in Petitioner's favor.  His detention has been significantly longer than the time that he spent in prison for the crime(s) that made him removable—as he notes in the amended petition, he was "sentenced to only 120 days in the aggregate related to the offenses . . . underlying his deportable status."  (Dkt. 9 at ¶ 63).  Having now been detained for over 40 months in the aggregate, Petitioner's immigration detention exceeds his criminal custody by a factor of ten.

The fifth factor—whether the detention facility is meaningfully different from a penal institution for criminal detention—is at best neutral, and more likely weighs in favor of Petitioner given the facts and circumstances of this case.  Respondent has submitted a declaration describing the conditions of confinement at the BFDF as not consisting of "the same level of restrictions typical for someone held at a prison."  (Dkt. 12-3 at ¶ 7).  However, even with the amenities detailed in that declaration, the reality is that the facility houses individuals against their will with various restrictions on their freedom of movement.  Moreover, Respondent acknowledges that "many programs and opportunities" ordinarily available at the BFDF "have been limited as a result of the COVID-19 pandemic."  (Dkt. 12-4 at 19 n.8).  Petitioner has also submitted evidence to the Court that after the amended petition was filed, he was placed in "medical isolation" after he "refused

9 or 10 meals while participating in a hunger strike." (Dkt. 13-1 at ¶ 4). According to Petitioner, this "medical isolation" consists of being placed on the solitary confinement unit, and the staff at the BFDF are "using solitary protocols for [him]." (*Id*. at ¶ 5). While the Court has no information regarding how long Petitioner will be held in "medical isolation," the conditions he claims to currently be subject to are not meaningfully different from the conditions at a penal institution.

The sixth factor, the nature of the crime(s) Petitioner was convicted of, weighs against Petitioner. Certain of Petitioner's criminal convictions were for crimes indicative of dangerousness, including harassment, attempted assault, menacing, and driving under the influence. *See Constant*, 409 F. Supp. 3d at 171 (finding sixth factor weighed against the petitioner where he had pleaded guilty to committing the violent crimes of manslaughter and attempted assault, as well as trafficking firearms). Petitioner's several convictions for resisting arrest are also arguably indicative of a disregard for the legal system. However, the Court notes that while past criminal convictions are critical to evaluating a petitioner's risk of danger to the community and of flight, "[t]he process due even to excludable aliens requires an opportunity for an evaluation of the individual's *current* threat to the community and his risk of flight." *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 240 (W.D.N.Y. 2019) (quoting *Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 398 (3d Cir. 1999)).

The final factor, whether Petitioner's detention is near conclusion, weighs in Petitioner's favor. It will likely be several months before the BIA issues a new decision as

ordered by the Second Circuit.  Moreover, if the BIA again rules against Petitioner, he will then have the opportunity to file a new PFR, resulting in an even longer delay.

The Court acknowledges that Petitioner did have a bond hearing in 2017, and that the burden at that hearing was nominally on the government to prove risk of flight and/or dangerousness by clear and convincing evidence.  However, the IJ in 2017 did not consider whether there were less-restrictive alternatives to detention that could mitigate any risk posed by Petitioner, which this Court has previously held is required for a Constitutionally adequate bond hearing.  *See, e.g., Blandon v. Barr*, 434 F. Supp. 3d 30, 40 (W.D.N.Y. 2020).  Moreover, it has been nearly four years since that initial bond hearing, and there have been material changes in the status of Petitioner's claims (including the Second Circuit's grant of his PFR).  *See Thomas v. Barr*, No. 20-CV-6362-FPG, 2020 WL 5760823, at *3 (W.D.N.Y. Sept. 28, 2020) (ordering a subsequent bond hearing when the petitioner's "detention since the previous bond hearing has been unreasonably prolonged").

Thus, on balance and particularly in view of the length of the detention and the circumstances surrounding that detention, the Court finds that Petitioner's continued detention without a procedurally proper bond hearing is constitutionally unjustified.  *See Arce-Ipanaque v. Decker*, No. 19-CV-1076 (JMF), 2019 WL 2136727, at *2 (S.D.N.Y. May 15, 2019) ("At bottom, the minimal burden that a bond hearing would place on the Government is far outweighed by [the petitioner]'s interest in ensuring that his continued detention is justified." (quotation and original alteration omitted)).  Due process requires that Petitioner receive a bond hearing where the government must demonstrate dangerousness or flight risk by clear and convincing evidence, where the IJ considers

whether less-restrictive alternatives to detention could mitigate that risk, and where the IJ considers ability to pay and alternative conditions of release in setting bond.  *See Velasco Lopez*, 978 F.3d at 856-57; *Abdi v. Nielsen*, 287 F. Supp. 3d 327, 335-39 (W.D.N.Y. 2018); *see also Hernandez v. Sessions*, 872 F.3d 976, 991 & n.4 (9th Cir. 2017) ("A bond determination that does not include consideration of financial circumstances and alternative release conditions is unlikely to result in a bond amount that is reasonably related to the government's legitimate interests."); *Arce-Ipanaque*, 2019 WL 2136727, at *3 (collecting cases); *Lett*, 346 F. Supp. 3d at 389 ("The Court agrees with Petitioner that an immigration bond hearing that fails to consider ability to pay or alternative conditions of release is constitutionally inadequate."); *Hernandez*, 2018 WL 3579108, at *12 ("[T]he Due Process Clause requires than an IJ consider ability to pay and alternative conditions of release in setting bond." (quotation and alteration omitted)).

However, the Court rejects Petitioner's contention that this Court should consider in the first instance whether he should be released and on what conditions.  "[D]istrict courts rightly favor conditional grants [of habeas corpus relief], which give the executive branch the opportunity to cure its constitutional errors and which appropriately recognize comity among the co-equal branches." *Hechavarria*, 358 F. Supp. 3d at 234–35 (W.D.N.Y. 2019) (quotations and original alterations omitted).  While it is true that the IJs at the Batavia Immigration Court have not always complied with this Court's orders with respect to the procedures to be applied at bond hearings, the Court does not find it appropriate to simply assume that they will not do so in this case.  Of course, in the event the IJ does not

follow the procedures set forth herein, Petitioner may bring a motion to enforce the Court's ruling, and may further seek immediate release at that point in time.

## IV.  **Substantive Due Process**

Petitioner also claims that the length of time he has been detained, and the purportedly unsafe conditions in which he is being held, constitute a violation of his Fifth Amendment right to substantive due process.  "In order to establish a violation of a right to substantive due process, a plaintiff must demonstrate not only government action but also that the government action was so 'egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"  *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). "Immigration detainees can establish a due process violation for unconstitutional conditions of confinement by showing that a government official 'knew, or should have known' of a condition that 'posed an excessive risk to health,' and failed to take appropriate action."  *Basank v. Decker*, 449 F. Supp. 3d 205, 214 (S.D.N.Y. 2020) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017)); *see also Coronel v. Decker*, 449 F. Supp. 3d 274, 282 (S.D.N.Y. 2020) ("The Due Process Clause . . . prohibits the federal government from being deliberately indifferent to the medical needs of civil detainees.").  As the *Coronel* court explained:

> [A] petitioner establishes a claim for deliberate indifference by proving that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.

449 F. Supp. 3d at 284 (quotation and original alteration omitted).

To the extent Petitioner is contending that the length of his detention alone constitutes a substantive due process violation (*see* Dkt. 9 at ¶ 40 ("[T]he time has come that Mr. McDonald's detention pending removal, particularly considering the cause of the delay, violates due process regardless of the procedural protections afforded."), that contention is inconsistent with well-established case law. As the Second Circuit explained in *Sanusi v. I.N.S.*, 100 F. App'x 49 (2d Cir. 2004), detention—even for an extended period of time—that is "prolonged primarily by [a petitioner's] pursuit of final judicial review of his claims" does not "in itself violate[] [substantive] due process." *Id.* at 51 (finding that six-year detention, while "extremely regrettable," did not constitute substantive due process violation).

The Court further finds that Petitioner has not established a substantive due process violation based on the conditions of his confinement. The crux of Petitioner's argument in this regard is that he is in "extreme risk of infection by COVID-19" while detained at the BFDF. (Dkt. 9 at ¶ 49). However, Petitioner does not claim that he has a medical condition that places him at high risk of serious illness should he contract COVID-19. Courts that have found that petitioners suffer from a serious medical need for purposes of the deliberate indifference analysis in the context of the COVID-19 pandemic have done so only for detainees suffering from conditions recognized by the Centers for Disease Control and Prevention ("CDC") as placing individuals at higher risk of severe illness. *See, e.g.*, *Ramsundar v. Wolf*, No. 20-CV-361, 2020 WL 1986923, at *2 (W.D.N.Y. Apr. 27, 2020) ("Because petitioners . . . did not meet the CDC criteria for COVID-19 vulnerability, the

Court found that the respondents were not acting with deliberate indifference to their medical needs and consequently denied their motions."), *amended*, No. 20-CV-361, 2020 WL 2557832 (W.D.N.Y. May 20, 2020); *Basank*, 449 F. Supp. 3d at 211 (identifying health and safety risks posed by COVID-19 based on CDC guidance); *Coronel*, 449 F. Supp. 3d at 279 (finding the petitioners, who had major organs partially removed, type 2 diabetes, obesity, and hypertension, were "particularly vulnerable to severe illness or death if infected by COVID-19").  Because Petitioner has not made such a showing, he has not demonstrated deliberate indifference to a serious medical need, and his conditions of confinement claim fails.

To the extent Petitioner is attempting to assert a conditions of confinement claim based on his recent placement into "medical isolation" (which he claims is really solitary confinement), the Court lacks sufficient evidence to find in Petitioner's favor.  In particular, Petitioner has provided the Court no information regarding how long his "medical isolation" is to last or the nature or purpose of the hunger strike that purportedly precipitated his change in status.  On this scant record, Petitioner has not satisfied his burden of demonstrating a violation of his rights.

## V.   Request for Appointment of CJA Counsel

The Court turns finally to Petitioner's request for appointment of counsel pursuant to the CJA.  (Dkt. 10).  As noted above, Respondent takes no position on Petitioner's motion.  (Dkt. 11).

"The CJA provides in relevant part that '[w]henever the United States magistrate or the court determines that the interests of justice so require, representation may be provided

for any financially eligible person who . . . is seeking relief under section 2241, 2254, or 2255 of title 28.'"  *Thomas v. Searls*, No. 20-CV-6362-FPG, 2021 WL 358129, at *3 (W.D.N.Y. Jan. 25, 2021) (quoting 18 U.S.C. § 3006A(a)(2)(B) and alterations in original). Accordingly, "the plain language of the CJA states that it applies to petitions for a writ of habeas corpus under Section 2241." *Id*.  Further, "this District's CJA Plan provides that the plan may cover work performed prior to appointment." *Id*. at *5 (citing W.D.N.Y. CJA Plan § V(D) at 7-8 (available online at https://www.nywd.uscourts.gov/standing-orders-and-district-plans/03-14-19 Revised CJA Plan Final.pdf)).

Here, Petitioner is seeking relief under § 2241.  Further, he has submitted a financial statement confirming that he is financially eligible for appointment of CJA counsel, inasmuch as he is indigent.  (Dkt. 10-1); *see also* 18 U.S.C. § 3006A(a).  Accordingly, the question facing the Court is whether the interests of justice warrant appointment of counsel. In making such an assessment, "courts in this circuit have looked to such factors as the petitioner's likelihood of success on the merits, the complexity of the legal issues raised by the petition, and the petitioner's ability to investigate and present the case." *Gonzalez v. New York*, No. 05-CV-9028, 2006 WL 728482, at *1 (S.D.N.Y. Mar. 21, 2006) (quotation omitted).

The Court finds that the interests of justice warrant appointment of counsel in this claim.  Petitioner has presented a meritorious claim that his procedural due process rights have been violated.  The legal issues were more complex than those presented by an ordinary immigration habeas petition, because Petitioner had a bond hearing in 2017. Further, counsel's work in this case aided both Petitioner and the Court in presenting the

issues for decision, as is evident by comparing the original, uncounseled petition (Dkt. 1) with the amended petition (Dkt. 9).  Accordingly the Court will grant Petitioner's motion for appointment of CJA counsel, retroactive to December 11, 2020, the date on which counsel first undertook work in this matter.  (*See* Dkt. 10 at 11-12).

## **CONCLUSION**

For the foregoing reasons, the Court: (1) dismisses all respondents except for Respondent Jeffrey Searls from the instant action; (2) grants the amended petition (Dkt. 9) in part to the extent that the Court orders the government to afford Petitioner an individualized bond hearing consistent with the procedures outlined in this Decision and Order within 14 days of its entry; (3) denies the amended petition without prejudice in all other respects; and (4) grants Petitioner's motion for appointment of CJA counsel and appoints Daniel E. Jackson, Esq. as counsel for Petitioner in connection with the instant action under the CJA, *nunc pro tunc* as of December 11, 2020.

If Petitioner requests a continuance that results in a bond hearing date outside the 14-day deadline set forth above, such a continuance will be in compliance with the instant Decision and Order, as long as the new date falls within a reasonable time period. Respondent is directed to file a status update with the Court within three (3) days of the date of a decision concerning Petitioner's bond hearing regarding the outcome of the hearing.  The Court denies Petitioner's request for immediate release.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: April 26, 2021
Rochester, New York